**Ralph CURTON, Jr., Appellant,**

v.

**Theodore Stanley GORDON, Appellee.**

**No. 12112.**

Court of Civil Appeals of Texas, Austin.

June 5, 1974.

Rehearing Denied June 26, 1974.

---

Dan Moody, Jr., James Chrisman Phillips, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellant.

John B. McNamara, McNamara, Smith & McNamara, Waco, for appellee.

O'QUINN, Justice.

This is an adoption proceeding brought by appellant, and heard by the trial court, prior to repeal of the then existing adoption statutes and before enactment of laws in lieu thereof now found in the Texas Family Code.

Ralph Curton, Jr. brought this action to adopt Blake Lee Curton, the minor son born to Curton's wife during her prior marriage to the child's natural father, Theodore Stanley Gordon. In an earlier action Blake's surname was changed from Gordon to Curton.

Upon objection by Gordon, the trial court denied Curton's application to adopt Blake on the court's findings and conclusions that Gordon, as the natural father, had neither abandoned, nor failed to provide support for, the minor, and that therefore the natural father's consent to the adoption was required.

We will reverse the judgment of the trial court and will remand the cause for further proceedings.

Gordon and Blake's mother were married and living in the State of Colorado in February of 1965 when they entered into a separation agreement in contemplation of a divorce. Blake was born about three months later, on May 13, 1965, and the divorce was granted afterwards on July 12, 1965. The divorce decree awarded custody of the child to the mother, now the wife of appellant, but contained no order concerning child support.

The apposite statute in this case is Article 46a, section 6(a), Vernon's Anno.Civ. Sts. (repealed by Acts 1973, 63rd Leg., p. 1458, ch. 543, sec. 3 eff. Jan. 1, 1974). The statute, as applied to the facts of this cause, provided that adoption would be proper only if written consent of the living parents of a child were obtained, but provided that written consent would not be required " . . . if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a pe-

**684**

riod of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability . . ." (as amended by Acts 1951, 52nd Leg., p. 388, ch. 249).

When the child's natural parents separated in Colorado, they entered into a written agreement on February 22, 1965, and as to the unborn child provided that:

1. The mother would "have the care, custody and control of the expected minor . . . subject to the approval of the [trial court to hear the divorce] . . . and subject to the right and privilege in the Husband to visit said child upon any and all reasonable times and occasions [after notice to the mother and on his promise not to remove the child] . . . ."

2. The mother " . . . accepts the custody of said child and agrees to properly care for, support, rear, train and educate the said child to the best of her ability . . . [and further agreed by the parties] that the Wife shall have the right and privilege to select the domicile or place of residence for said child at whatsoever place she may desire, but will inform the Husband of any change in said place of residence."

3. The mother further " . . . agrees that she will not make any claim against the Husband for support either by way of alimony or otherwise, other than the payments for child support if the Wife or her family is financially unable to support the child in the future."

4. "The Wife in consideration of the foregoing covenants and agreements agrees that she will not at any time undertake to hold the Husband liable for, or undertake to collect from him any sum or sums of alimony, court costs, attorneys fees, support or maintenance for herself or said child,

except for said child upon the terms hereinabove set out, and that this agreement may be pleaded in any suit as a defense to any action for the same."

Blake's mother, two years subsequent to the divorce in Colorado, married the appellant in this cause in July of 1967, and three children have been born to their marriage. Gordon also remarried after the divorce, and two children have been born to that marriage. Blake has at all times since July, 1967, lived with his mother and appellant in Texas, either in Waco or Austin.

The trial court filed findings of fact and conclusions of law.

The trial court found, and Gordon by his testimony in effect conceded, that Appellant Curton "is a fit and proper person to be allowed joint custody and control of the child who is the subject matter of this action." The court also filed its conclusion that "But for the refusal of . . . Gordon to consent to the requested adoption, the Court would have consented to and granted such adoption."

Although the trial court found as a fact that " . . . Gordon has made provisions and arrangements for the support and maintenance of said minor child by the agreement between himself and Donna Lee Curton," the child's mother, the court made the additional finding of fact that the contestant, " . . . Gordon, has made no contributions to the support of said child to his said mother and custodian for a period of more than two years next preceding the filing of the petition . . . and has, indeed, never made any such contributions to the support of the said child."

The court filed its conclusions that " . . . Gordon has not abandoned said minor child," and further that " . . . Gordon has not failed to provide support for such minor child commensurate with his ability to do so."

We do not agree with either of these two conclusions. We will hold that, as a matter of law for a period in excess of

two years, Gordon (1) failed to contribute substantially to the support of the child commensurate with his financial ability and (2) voluntarily abandoned the child through a course of conduct implying a conscious disregard or indifference to the child in respect to the obligation as a father Gordon owed his son.

The undisputed facts are stated as follows. Gordon and the child's mother separated early in 1965, some three months before Blake was born, and Blake was five and one-half years old before Gordon ever saw the boy. At the time of trial in 1973, after Blake had passed his eighth birthday, Gordon had seen the youngster only twice in the boy's lifetime.

Gordon was never discouraged by the boy's mother, or anyone else, from visiting Blake, and at all material times Gordon knew the boy's whereabouts. When asked why he had not visited his son until the boy was five and one-half years old, Gordon testified, "It wasn't quite convenient, moneywise and situationwise. I was never in the vicinity. I was either in Colorado or Florida."

Gordon testified that he had been gainfully employed through the years, either as a bartender or in construction work, and conceded that he could have made some contribution to the support of Blake, about equal to the payments he made toward support of his other children from two marriages prior to his marriage to Blake's mother. When Blake was nearly three years old, Gordon learned that Blake's stepfather, Appellant Curton, wished to adopt Blake. Shortly thereafter Gordon began making payments, apparently about $20 a month, to a savings account, set up through Blake's maternal grandmother. Gordon testified that he and the grandmother were the only persons who knew of the savings account, and that he did not think anyone could withdraw from the account until Blake "is a certain age."

Gordon and his present wife and children in September of 1969 moved to Hawaii, where Gordon intended to make a permanent home, but later had to return to the Continental United States in 1970 because, Gordon testified, "We couldn't make it." Gordon stated that he "Loved it" in Hawaii and would have "Still been there" but for economic conditions forcing his return to the continent. At the time Gordon left to make his home in Hawaii he had never seen Blake and did not see him, then for the first time, until almost a year after returning from Hawaii.

Gordon candidly admitted that he had no objection to Curton, was satisfied with the way Curton and the boy's mother were rearing Blake, but did not want anyone to adopt the boy. Gordon testified that prior to 1972 or 1973 he had never written to Blake, although when he wrote the boy's grandmother at Waco, Gordon would add, ". . . say hello to Blake, wish him a happy birthday."

In summary, it may be said that for more than five years following the divorce, Gordon never communicated with his son and never saw the boy, and that for about the first three years of that period Gordon made no financial outlay in Blake's behalf. After that Gordon made only $20 installments to a savings account, the existence of which remained unknown to the principals in this case until early in 1973.

■ The period of two years mentioned in the statute, in which abandonment may mature or failure to support may obviate the requirement of the natural father's consent to adoption, need not be the period immediately prior to the proceeding to adopt. Any two-year period after the divorce in which there is abandonment, or unexcused nonsupport, will meet the requirements of the statute. Lout v. Whitehead, 415 S.W.2d 403 (Tex.Sup.1967).

■ The natural father has the legal duty to support his child, even when not ordered by the trial court to make payments of support. Laslie v. Cole, 465 S. W.2d 811, 813 (Tex.Civ.App. Corpus

Christi 1971, no writ); Homfeld v. Pence, 487 S.W.2d 224, 227 (Tex.Civ.App. El Paso 1972, no writ). Occasional gifts to the child are insufficient. *Homfeld,* 487 S.W.2d 228.

■ The trial court concluded that Gordon did not fail "to provide support for such minor child commensurate with his ability to do so." This conclusion appears to be based on the finding that Gordon made arrangements for the child's mother to furnish "support and maintenance of said minor child." We are unwilling to accept such arrangements as a substitute for the natural father's legal duty to support his son. The fact that Gordon divested himself of obligations to his wife to furnish support for the child, except only " . . . if the Wife or her family is financially unable to support the child in the future," was not sufficient to relieve Gordon of his common law duty to contribute to the support of his son within the provisions of Article 46a, sec. 6(a).

We conclude that abandonment, within the purview of Article 46a, sec. 6(a), is even more clearly established. Gordon voluntarily began a course of conduct, even before Blake was born, which implied a conscious disregard or indifference to the child in respect to the parental obligation Gordon owed his son. This willful course began with the separation agreement, continued through birth of the child and the divorce proceedings, and extended for more than five and a half years, when Gordon finally found it convenient to visit Blake for the first time. The facts in connection with this course of conduct fall within the test stated in Strode v. Silverman, 209 S.W.2d 415, 419 (Tex.Civ.App. Waco 1948, writ ref. n. r. e.), approved in Hendricks v. Curry, 401 S.W.2d 796, 801 (Tex.Sup.1966).

Clearly absent from this case are circumstances to invoke the exception that the rule is inapplicable if the "act or a course of conduct pursued by a parent . . . is done through force of circumstances or dire necessity." *Strode,* 209 S.W.2d 419. In Hutson v. Haggard, 475 S.W.2d 330, 333 (Tex.Civ.App. Beaumont 1971, no writ), the court held that the natural father's voluntary acts which brought about his confinement in prison constituted abandonment. In the case before us the natural father was a free agent, working at his trades in gainful employment, marrying a fourth time and starting a new family, but not finding it "quite convenient, moneywise and situationwise," to visit, or see, for more than five years, the son whose adoption he now opposes. Abandonment within the meaning of Article 46a is not to be confused with child desertion as a crime, and the standards to be applied to the latter are not applicable to the former. See Jordan v. Hancock, No. 951, Houston (14) Court of Civil Appeals, decided April 10, 1974, rehearing denied May 1, 1974, 508 S.W.2d 878.

Judgment of the trial court denying Curton's application to adopt Blake Lee Curton is reversed. The cause is remanded for entry of an order granting the adoption in conformity with this opinion.

Reversed and remanded with instructions.

PHILLIPS, C. J., not sitting.