In the Interest of A.D.E., a Child.

No. 13–93–586–CV.

Court of Appeals of Texas,
Corpus Christi.

July 7, 1994.

**242**

Elaine S. Michael, League City, Diane D. Clark, Texas City, for appellant.

Michael J. Guarino, Crim. Dist. Atty., Denise V. Wilkerson, Asst. Crim. Dist. Atty., Galveston, for appellee.

Before DORSEY, FEDERICO HINOJOSA and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

Loretta and Anthony Earls appeal from an order terminating their parent-child relationships with their child, A.D.E. Following a jury verdict, the trial court ordered their parent-child relationships terminated and appointed the Texas Department of Protective and Regulatory Services as managing conservator. We affirm.

The day A.D.E. was born, the State, through Galveston County Children's Protective Services (Galveston C.P.S.), filed a suit for the protection of a child in an emergency and an original petition in suit affecting the parent-child relationship. Emergency relief was granted the next day whereby the court appointed the State, Galveston C.P.S., as temporary managing conservator of the child. Galveston C.P.S. took possession of

A.D.E. the same day. Two weeks later, the court held a hearing and issued temporary orders that the State continue as A.D.E.'s managing conservator. The temporary orders do not name a possessory conservator, nor is there any mention of visitation rights for either parent. After three six-month review hearings, the State filed a petition to terminate the parent-child relationships between Loretta and Anthony Earls and their child A.D.E.

At the termination trial, the jury found that Anthony Earls' parental rights should be terminated on the grounds that he had failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition and that termination was in the child's best interest. The jury found that Loretta Earls' parental rights should be terminated because, prior to her marriage to Anthony Earls, she had been adjudicated criminally responsible for the death or serious injury of another of her children and that termination was in the best interest of this child.

On appeal, Loretta brings one point raising a *Batson* error by the trial court. By two points of error, Anthony contends that there is insufficient evidence to support the finding that he failed to financially support his child and that he was "denied due process to notice and the right to be heard thereby denying him his constitutional right to his child."

**Loretta's *Batson* Challenge**

Loretta contends that the trial court erred in overruling her objections that the State exercised its peremptory challenges to remove all African–American veniremembers.

Veniremembers twelve and nineteen were the only African–Americans on the jury panel. The State, utilizing its peremptory challenges, struck both. Before the jury was sworn in by the court, appellant made a *Batson* challenge asserting that the African–American panelists had been struck because of racial bias. The trial court made no findings of fact or conclusions of law. Appellant asserts that there was a strong inference that these women were struck because of their race.

■ The use of peremptory challenges to discriminate against potential jurors in a civil case because of race is a violation of the excluded juror's right to equal protection, a right which may be asserted by the party not exercising the peremptory strikes. *See Powers v. Palacios,* 813 S.W.2d 489 (Tex.1991) (citing *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) & *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). The Texas Code of Criminal Procedure was amended to incorporate the *Batson* holding. *See* Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon 1989). As there has not yet been an amendment to the Texas Rules of Civil Procedure regarding peremptory strikes based upon race, we look to the criminal jurisprudence of the State for guidance. *Lott v. City of Fort Worth,* 840 S.W.2d 146, 149 (Tex. App.—Fort Worth 1992, no writ).

■ At a *Batson* hearing, the complaining party must present evidence that gives rise to a rebuttable presumption of racial discrimination by the striking party in the exercise of their peremptory challenges. *Id.* at 150. If the complaining party carries that burden, then the burden shifts to the striking party to rebut the presumption by a racially neutral explanation for each peremptory challenge exercised against a minority venireperson. *Id.* While the striking party's explanation need not rise to the level justifying the exercise of a challenge for cause, the party must articulate a neutral explanation related to the particular case to be tried. *Williams v. State,* 804 S.W.2d 95, 103 (Tex. Crim.App.1991); *Woods v. State,* 801 S.W.2d 932, 934 (Tex.App.—Austin 1990, pet. ref'd). A neutral explanation is one based upon something other than the race of the juror. "The issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Chambers v. State,* 866 S.W.2d 9, 24 n. 16 (Tex.Crim.App.1993) (citing *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)).

■ Once the striking party has given its racially neutral explanations, the complaining party can offer evidence showing these explanations are merely a sham or pretext for discrimination. *Woods,* 801 S.W.2d at 935. The complaining party has the ultimate burden to persuade the trial judge that the reasons offered by the State for the peremptory challenge were merely pretextual and a cover for a racially motivated challenge. *Camacho v. State,* 864 S.W.2d 524, 528 (Tex. Crim.App.1993) (citing *Hill v. State,* 827 S.W.2d 860, 870 (Tex.Crim.App.1992)). At the conclusion of the *Batson* hearing, the trial court must determine if the party has established purposeful discrimination. *Young v. State,* 826 S.W.2d 141, 145 (Tex. Crim.App.1991), *reversed on remand,* 848 S.W.2d 203 (Tex.App.—Dallas 1992), *pet. ref'd,* 856 S.W.2d 175 (Tex.Crim.App.1993).

When appealing a *Batson* ruling, appellant may not raise matters on appeal that were not raised before the trial court. *Young,* 826 S.W.2d at 146. Appellant may argue what is in evidence from the voir dire proceeding and what was introduced as evidence at the *Batson* hearing and explain why she should prevail on her *Batson* claim. *Id.* The State is likewise allowed to argue before the appellate court the facts developed in the record to support its neutral explanation given in response to appellant's prima facie case or to controvert the rebuttal evidence offered by appellant in the *Batson* hearing or the comparisons raised on appeal to show that its explanations were racially neutral. *Id.*

The trial court's decision on the ultimate question of discriminatory intent is to be accorded great deference on appeal, and we will not disturb the ruling unless it is "clearly erroneous." *Id.; Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1990) (on rehearing). If supported by the record, including voir dire, the prosecutor's explanation of his use of a peremptory challenge, the rebuttal by appellant, and impeaching evidence, the decision of the trial court will not be clearly erroneous. *Camacho,* 864 S.W.2d at 528. We look to the record to see if we are left with the "definite and firm conviction that a mistake has been committed." *Hill,* 827 S.W.2d at 865.

**This Particular *Batson* Hearing**

■ Loretta complained by a timely *Batson* objection that all of the African–Ameri-

cans on the panel were struck by the State. This gave rise to a rebuttable presumption of racial discrimination.

The State then offered its race neutral explanation at the *Batson* hearing, stating that it struck veniremember nineteen because she was a neighbor of Loretta's attorney. The State's attorney believed that it would be very difficult for veniremember nineteen to face Loretta's attorney at home if she were on the jury and voted against her. The State's attorney continued its explanation stating that if veniremember nineteen had not lived in the same apartment complex as Loretta's attorney, he would not have struck her. At the *Batson* hearing, appellant's attorney offered no evidence to rebut the State's explanation and stated that she understood why the State struck juror nineteen.

The statement of facts from the voir dire proceedings reflects that veniremember nineteen was a neighbor of Loretta's attorney in that they lived in the same apartment complex. Loretta failed to show that the State's explanation was merely pretextual and racially motivated. Reviewing the evidence in the light most favorable to the ruling, we conclude that the trial court's overruling of appellant's objection to the State's peremptory strike against veniremember nineteen was not clearly erroneous.

Regarding veniremember twelve, the following occurred:

[Appellant's Attorney]: Your Honor, at this time on behalf of Loretta Earls, I would like to make a Batson challenge that all Afro–American panelists on the panel have been struck and that the D.A. has made those strikes, if they were made by him, because of a racial bias.

[Prosecutor]: May I get my list, Judge? I wrote down my reasons.

Court: Okay.

[Prosecutor]: Okay, Judge, what are their numbers?

[Appellant's Attorney]: # 12 and # 19.

[Prosecutor]: Judge, I think I need to put on my reasons for striking # 12. . . .

Court: Go ahead.

[Prosecutor]: # 12, . . . because she is a grandmotherly type. Other than that, I liked her a lot. If she was younger, I would have kept her. . . .

[Appellant's Attorney]: In answer to the striking of # 12, the grandmotherly type, [# 8] is 69 years old and is a grandmotherly type.

. . . . .

[Prosecutor]: Let me get my other list. Hang on just a minute.

. . . . .

[Prosecutor]: Once again, Judge, I have no notes by [# 8] and frankly, I didn't really remember anything about her except that she had testified that before being a realtor, she was either with a daycare or a school and I can't remember which one but she had worked a lot with kids and because of that, I decided not to keep her. I can't recall which one it was, but I just couldn't remember anything about her and I don't have any notes on her. Who else are we talking about besides [# 8]?

[Appellant's Attorney]: Well, she's the only one that appears to be the grandmotherly type besides # 10, and I don't know that she's old enough to be a grandmother.

[Prosecutor]: # 10 on the jury is Mr. Ressler. She (sic) has no children.

[Appellant's Attorney]: No, we're saying Mrs. Vevers is a grandmotherly type. Our motion, Judge, is that the jury is not racially reflective of our community, and my client is African American.

[Prosecutor]: Okay, Judge, I would only note to you that there were very, very few blacks on the jury panel. That has nothing to do with—That's just random choice, and our strikes are not racial. I've indicated these people have nothing to do with race. As a consequence, I think we've fulfilled our obligation under *Batson.*

Court: I'll overrule the motion.

\* \* \* \* \* \*

■ Loretta argues that there was a strong inference that veniremember twelve was struck because of race since the State did not exercise peremptory strikes against

other veniremembers who were within the same age bracket as veniremember twelve and who had children. The State argues that it presented a race-neutral explanation for striking veniremember twelve. The State explains that it did not want veniremember twelve because she was "a grandmotherly type" who worked at a child care center and because she might sympathize with the situation of the grandmother in this case. The State argues that the other "grandmotherly type" woman mentioned during the *Batson* hearing was not married, had no children, and was a realtor. The State contends that these two characteristics combined were a reasonable race-neutral explanation for the striking of veniremember twelve. We agree.

Following the State's race-neutral explanation, the burden was appellant's to show that the State's explanation was a pretext or sham for discrimination. Loretta presented only argument and offered no evidence or sworn statements· at the *Batson* hearing to rebut the State's race-neutral explanation. Reviewing the evidence presented at the *Batson* hearing in the light most favorable to the ruling, we conclude that the trial court's ruling in this case was not clearly erroneous.

■ Loretta, by a supplemental transcript, and by her brief to this court, contends that, based on information in the personal profile cards, other people within the same age bracket as veniremember twelve were not struck by the State. The personal profile cards of the veniremembers were not admitted into evidence at the *Batson* hearing and thus were not before the court when it ruled on Loretta's *Batson* objections. Facts necessary to show the existence or absence of disparate treatment cannot be merely recited into the record as evidence through unsworn statements. *Shields v. State,* 820 S.W.2d 831, 833 (Tex.App.—Waco 1991, no writ) (citing *Prosper v. State,* 788 S.W.2d 625, 627 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd)). Counsel who want the record to reflect certain facts must include them in the record at the *Batson* hearing as evidence either by sworn testimony, exhibits, stipulations, admissions, or judicial notice.

We overrule Loretta's sole point of error.

## Anthony's Sufficiency Challenge

■ By Anthony's first point of error, he alleges that insufficient evidence supports the jury finding and the trial court's order determining that he failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. *See* Tex.Fam.Code Ann. § 15.02(a)(1)(F) (Vernon Supp.1994). Anthony does not dispute the finding that termination was in the child's best interest.

■ A court may terminate parental rights if it finds that (1) the parent has engaged in any of the specific conduct enumerated in the Family Code as grounds for termination and (2) termination is in the best interest of the child. Tex.Fam.Code Ann. § 15.02(a)(1), (2) (Vernon Supp.1994); *Ybarra v. Texas Dept. of Human Services,* 869 S.W.2d 574, 576 (Tex.App.—Corpus Christi 1993, no writ). The party seeking termination of parental rights, in this case the State, has the burden to prove the necessary elements for termination by clear and convincing evidence. *Ybarra,* 869 S.W.2d at 576 (citing *In re G.M.,* 596 S.W.2d 846, 847 (Tex. 1980); *In re Z.W.C.,* 856 S.W.2d 281, 282 (Tex.App.—Fort Worth 1993, no writ); Tex. Fam.Code Ann. § 11.15(b) (Vernon 1986). "Clear and convincing" is an intermediate standard, falling somewhere between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re Z.W.C.,* 856 S.W.2d at 282 (quoting *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979)). The clear and convincing standard of review required to terminate parental rights does not alter the appropriate sufficiency standard of appellate review. *D.O. v. Texas Dep't of Human Services,* 851 S.W.2d 351, 353 (Tex.App.— Austin 1993) (citing *State v. Turner,* 556 S.W.2d 563, 565 (Tex.1977)).

Initially, we note that because Anthony did not file a motion for new trial, our sufficiency of the evidence review is limited to reviewing the legal sufficiency of the evidence and we may not address the factual sufficiency of the evidence. Tex.R.Civ.P. 324(b)(2); Tex. R.App.P. 52(d).

In addressing a "no evidence" point of error and deciding whether the evidence is legally sufficient to support a jury finding, we consider only the evidence and reasonable inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 593 (Tex.1986); *In re Z.W.C.*, 856 S.W.2d at 282. We overrule the point and uphold the finding if we find evidence to support the finding. *Southern States Transp., Inc.*, 774 S.W.2d 639, 640 (Tex. 1989).

 Each parent has the duty to support his or her child. Tex.Fam.Code Ann. § 4.02 (Vernon 1993). A father has the legal duty to support his child, even when not ordered by the trial court to make payments of support. *Curton v. Gordon*, 510 S.W.2d 682, 685 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.) (citing *Laslie v. Cole*, 465 S.W.2d 811, 813 (Tex.Civ.App.—Corpus Christi 1971, no writ)). Occasional gifts are insufficient to fulfill a parent's obligation of support. *Homfeld v. Pence*, 487 S.W.2d 224, 228 (Tex.Civ. App.—El Paso 1972, no writ).

To support a termination under Family Code Section 15.02(a)(1)(F), there must be a period of twelve consecutive months of failure to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition. *Jimenez ex rel. Little v. Garza*, 787 S.W.2d 601, 603 (Tex. App.—El Paso 1990, no writ). A.D.E. was born February 18, 1992. The State filed its original petition to terminate the parent-child relationship between Anthony and A.D.E. on February 23, 1993.

Anthony argues that throughout 1992 he did not have a steady job and considered himself unemployed. He did odd jobs on his own. Sometimes work was scarce and sometimes he made between $200 and $300 per month. From November 17, 1992, until December 19, 1992, he was in a residential rehabilitation facility, was not allowed to leave, and had no income. From mid-January 1993 through March 1993, he worked at Popeye's for $4.25 per hour for 32 hours per week. During April 1993, he worked two days per week—on and off—at Imperial Sugar Company at $14.00 per hour for eight hours per day. Between April 1993 and the date the State filed the first amended original petition for termination, Anthony worked odd jobs like cutting grass. He contends that there is no way there could be a valid finding of ability to pay child support with such a limited income after considering his level of poverty and necessary living expenses.

The State responds that the evidence shows that Anthony had income and, except for the time he was in rehabilitation, he was never unemployed.

Based upon the evidence presented, we conclude that there is some evidence to support the jury's finding. It is undisputed that Anthony did not make any payments for A.D.E.'s support since his birth. Anthony's testimony reflects that he was employed and earning money sporadically during the one year at issue. Although not always working for someone else he was doing odd jobs and made money. Also, he acknowledged that he had an obligation to support his children even without any sort of court order or prompting by others. Additionally, he testified that he never offered to pay any kind of child support to take care of the child. When asked if he could have afforded some child support, he said "yes" and that he could have sent $10 per month. Also, he explained that he sent money, when he made some, to support another of his children who was living with his mother. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that legally sufficient evidence exists to support the jury's finding and the trial court's judgment. We find that evidence exists that Anthony had the ability to provide some financial assistance to help support his child during the one year at issue. We overrule Anthony's first point of error.

By his second point of error, Anthony contends that "he was denied due process to notice and the right to be heard thereby denying him his constitutional right to his child." He contends that he was not given notice of the requirement that he was to pay child support for a child that was taken into custody by the State at birth and for whom he was not court-ordered to pay child sup-

port. We note however, that at trial, Anthony testified that he understood he had a duty to support his child regardless of whether child support was ordered by the court.

Anthony complains about his denial of due process for the first time on appeal. He made no objections at trial that he was denied due process. Under Texas Rule of Appellate Procedure 52(a), in order to preserve a complaint for appellate review, a party must have presented a request, objection, or motion to the trial court stating the specific grounds for the ruling desired. Tex. R.App.P. 52(a). The party must also get a ruling from the trial court on the request, objection, or motion. *Id.* As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal. *Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex.1993). A party waives the right to raise even constitutional issues on appeal if that claim is not presented to the trial court. *Hernandez v. State Bar of Texas,* 812 S.W.2d 75, 78 (Tex.App.—Corpus Christi 1991, no writ). We conclude that Anthony has waived any error as to his due process claim. We overrule point two.

Anthony does not challenge the jury's finding that the best interest of the child required termination. We have read the statement of facts and hold that such a finding is fully supported by the evidence.

We affirm the trial court's judgment.