NO. 07-01-0136-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 12, 2001

_____

IN THE INTEREST OF OCTAVIA DEVON ALLEN, A CHILD

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 61,637-D; HONORABLE JOHN T. FORBIS, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

In four points of error, appellant Helen M. Allen contends the trial court erred in terminating the parent-child relationship between her and her minor son Octavia Devon Allen. In her first three points, she contends the trial court erred in finding by clear and convincing evidence that her parental rights should be terminated because the evidence was legally, or in the alternative, factually insufficient to support such a finding. Specifically, she says there was insufficient evidence that 1) she engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the

physical and emotional well-being of the child; 2) the termination of the parent-child relationship between Holli Rene Sinclair[1] and the child was in the child's best interest; 3) she knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child; and 4) she had her parent-child relationship terminated with respect to another child based upon a finding that her conduct was in violation of Texas Family Code § 161.001(1)(D) or (E).[2] Disagreeing that reversal is required, we affirm the judgment of the trial court.

Standard of Review

Section 161.001 of the Family Code provides that parental rights may be terminated if the trial court finds by clear and convincing evidence that the parent has engaged in conduct of the type proscribed by the statute and if it also finds that termination would be in the best interest of the child. The requirement of clear and convincing proof is necessary because the termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). That standard means that the evidence must be enough to produce in the mind of the factfinder a firm conviction or belief

---

[1]The record is not clear about the relevance of this point insofar as Holli Rene Sinclair may be concerned.

[2]Section 161.001(1)(D) concerns knowingly placing or knowingly allowing the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. Section 161.001(1)(E) concerns engaging in conduct or knowingly placing the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(D) & (E) (Vernon Supp. 2001).

that the allegations are true.  *In re A.D.E.*, 880 S.W.2d 241, 245 (Tex.App.--Corpus Christi 1994, no writ). The clear and convincing standard of review required to alter parental rights does not alter the appropriate sufficiency standard of appellate review.  *Id*.

The standards by which we consider legal and factual sufficiency challenges are now so well established as to remove any necessity for their reiteration in detail.  *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 276 (Tex.App.--Amarillo 1988, writ denied).  Suffice it to say that a "no evidence" or legal insufficiency point of error will be sustained when 1) the record discloses a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the evidence establishes conclusively the opposite of the vital fact.  *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999).  In considering a factual insufficiency challenge, we must examine the entire record to determine if there is some probative evidence to support the finding, and if there is, we must determine whether the evidence supporting the finding is so weak or the answer so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.  *Raw Hide*, 766 S.W.2d at 276.  In performing that function, we must remember that the factfinder, as opposed to the appellate court, also enjoys the right to resolve credibility issues and conflicts within the evidence and to believe all, part, or none of the testimony espoused by

3

any particular witness. *In the Interest of R.D.S.,* 902 S.W.2d 714, 716 (Tex.App.--Amarillo 1995, no writ).

The nature of appellant's challenges require a somewhat detailed recitation of the relevant evidence. Shannon Burch, an investigator for the Texas Department of Protective and Regulatory Services (the Department) testified they received a report about medical neglect of Octavia and, on February 10, 1997, Burch said she discussed Octavia's abscessed teeth and asthma with appellant. She said that appellant "didn't seem to understand that his abscessed teeth and everything were causing an infection that could result in serious harm to him" if untreated. Burch said that surgery had been scheduled several times, but appellant had canceled it. She also averred that appellant had her parental rights terminated as to her other children. Burch stated that dental surgery had been scheduled for February 25, but was canceled because appellant had given Octavia candy the night before. Although appellant said she did not know he could not eat before surgery, Burch averred she knew appellant had been told this on "all the previous occasions" that surgery had been scheduled and then canceled.

Under cross-examination, Burch admitted that appellant told her she was not satisfied with the respiratory therapy her child had received. She said she believed there had been four previous oral surgeries scheduled, but did not know the number from her own knowledge. She also admitted that her other children had been removed before the birth of Octavia. Burch also said that the Department considers a parent's previous history with the agency, because "it shows their ability to adequately parent the child."

Dr. William J. Kemp, Jr. testified that he was a pediatric dentist with 22 years experience. Appellant brought Octavia to see him when he was two years old and told him the child was having pain in his teeth. The doctor found that Octavia had dental abscesses of such severity that oral surgery was needed and he scheduled day surgery to treat the child appropriately. The doctor said that if infection such as that present in the child was not treated, it could have an effect on the general health of the child. He described the infection as "extremely severe." Kemp felt that appellant understood what needed to be done for the child. The surgery was first scheduled for August 14, 1997, but appellant and the child did not appear. Appellant was contacted and the surgery rescheduled for October, 1997. On that date, appellant and Octavia arrived and then disappeared.

The doctor had no further contact with appellant and the child until August 4, 1999, almost two years later. At that time, he said, there were "draining fistulas by the abscessed teeth." He rescheduled surgery for September 24, 1999, and informed appellant of the setting. A pre-operation physical was scheduled for September 23, 1999, but again, appellant and Octavia failed to appear. Dr. Kemp did not see appellant or Octavia until February, 2000. At that time, a pediatrician called from Northwest Texas Hospital and asked him to evaluate Octavia's dental needs. He did so and decided that the child's dental needs had not been taken care of during the two-year period and were much worse. At that time, the two teeth that had been abscessed were, according to the doctor, "probably two of the worst abscessed teeth I have seen in my 22 years of practice, fistulated sacks, cystic sacks around the root ends." The necessary oral surgery was scheduled for the next morning, but appellant decided not to have the work done and fed

5

the child. Two weeks later, the surgery was rescheduled, but again, appellant fed the child the night before and surgery could not be performed. Finally, after the Department had the child's supervision, the necessary surgery was done on April 28, 2000. Two teeth were removed, which would not have been necessary had they been properly treated. In his view, the child had been subject to pain over the period the infection had existed and his eating habits would have been affected. He believed appellant had been guilty of medical neglect because of the pain and the infection's effect generally. Dr. Kemp admitted he had told appellant of some risks that exist with any surgery, but she did not appear to be agitated about them.

Doctor Walter Joseph Bridges, a pediatric specialist, also testified. On February 2, 2000, Octavia was brought to Northwest Texas Hospital by appellant. At that time, the child was suffering from respiratory distress, low oxygen saturation, and fever. He was kept for two days with a prescribed continued course of treatment, including a hand-held nebulizer, antibiotics, and steroids. Appellant was given specific instructions as to how to administer this course of treatment. However, the child was returned to the hospital emergency room the day after his discharge suffering from wheezing, an increased respiratory rate, decreased oxygen saturation, and a 104 degree fever. In the doctor's opinion, Octavia's condition would not have worsened if appellant had followed the prescribed course of treatment.

Doctor Carmen Marie Werner, a private practice pediatrician, then testified. She said that as a partner of Dr. Bridges, she was contacted when the child was returned to the

emergency room the second time. Her admitting diagnosis was that he was suffering from asthma exacerbation and respiratory distress. During Octavia's admission examination, she noted he had multiple abscesses in his mouth, which resulted from neglected dental hygiene and many of his teeth had rotted down close to gum level. She also noticed that the child's nutritional status was not good for his age. Although he was almost five years old, he was still feeding primarily off a baby bottle. She also mentioned that she believed that while Octavia was in the hospital, appellant had removed the child's oxygen mask and, at times, the nurses would check the I.V. needle used for the administration of medicine and find it was "mysteriously out."

Appellant testified that she had not wanted the dental surgery performed because she knew two other children that had silver caps put on and had pain after that. She also had a niece whose children had oral surgery and continued to have pain. She also averred that she had given Octavia the breathing treatments as the doctor had shown her. She said she did not know that giving Octavia candy the night before the scheduled oral surgeries would hurt. She also denied that she removed the child's oxygen mask or ever pulled out his I.V. tube. She said that she had tried to follow the doctors' instructions about Octavia's care. She did not have a residence at the time of the hearing and did not know the address where she was supposedly living at the time of the hearing. Appellant was unemployed at the time of the hearing and had been for some time.

Our review of the evidence satisfies us that it is amply sufficient to justify the findings of the trial court.  Accordingly, all of appellant's points are overruled and the judgment of the trial court is affirmed.


John T. Boyd
Chief Justice

Do not publish.