NUMBER 13-01-025-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

___________________________________________________________________


IN THE INTEREST OF C.F., AND C.F., MINOR CHILDREN

 ___________________________________________________________________


On appeal from the County Court at Law No. 2 of 

Angelina County, Texas.

___________________________________________________________________



O P I N I O N


Before Justices Dorsey, Yañez, and Wittig (1)

Opinion by Justice Wittig

 

This is an appeal of a parental termination case. A jury was waived and the case was tried to the county court judge. After
two days of testimony, the trial court terminated the parental rights of appellant, Shirley Ross, and Sonny Fuller. They are 
the parents of a minor daughter C.F. as well as a minor son, C.F. No appeal was taken by Fuller. In a single issue,
appellant challenges the factual sufficiency supporting the court's decree in favor of the Texas Department of Protective and
Regulatory Services-Child Protective Services ("TDPRS" or "CPS"). We will affirm.

 Background Facts

Appellant's first Texas contact with CPS was in 1991. After several years of intervention, the children were left with
appellant in 1994. In 1994, appellant was divorced from Sonny Fuller, and David Fussell was appointed sole managing
conservator with appellant named as possessory conservator (2) of the two minors. Fuller left for Alaska and was not seen
again until the time of the trial court's hearing on termination in 2001. The CPS contact at issue began in 1999, after police
were called following a suicide threat by appellant. The police took appellant to the hospital and turned the children over to
CPS. CPS then changed its prior "family preservation" goal to one of termination/adoption.

Appellant's history included prior trouble with alcohol and mental diseases going back to childhood. She had been in a
number of abusive relationships, both married and unmarried. When appellant was in her twenties, her parental rights to
two very young children were terminated while she lived in Louisiana. Her middle child, C.F., (3) was placed in custody of
juvenile authorities for alleged arson. The period 1999 forward included allegations of sexual abuse, which, although oft
repeated by the children, proved unsubstantiated. At least one instance of physical abuse to the younger male, C.F., was
corroborated by a facial bruise. Dramatic photos of the house, taken August 2, 1999, after the suicide threat, demonstrated
a jagged broken window, exposed electrical outlets, an unkept house, knives on the floor and an axe lying on the utility
room floor. A psychiatrist testified he examined and treated appellant during her August, 1999, hospitalization. In his
diagnosis, he testified he agreed with a psychologist that appellant suffered from a non-specific psychotic disorder, a
depressed mood and borderline intellectual functioning. He described the psychotic disorder as delusional, i.e., out of
contact with reality, not having beliefs commonly shared by others. Appellant was prescribed Risperdal. The doctor
thought appellant would improve with medication. Without medicine, however, appellant would have a difficult time
raising children. No medical prognosis was given.

A licensed professional counselor (master's degree) echoed the testimony of the psychiatrist. The counselor added appellant
does not take responsibility for her actions, was sometimes pleasant, friendly, and cooperative, though at other times she
was hostile. The counselor also related a developmental history of emotional, physical and sexual abuse. Likewise,
appellant's husband, Aaron, was said to be physically abusive to the male child. The counselor also opined appellant to be
unstable and the children could "possibly" be in physical danger. The CPS case worker questioned the bonding of appellant
and her children, stated the children improved in foster care, and that sometimes appellant and her children interacted well
during supervised visitations. 

The case worker also gave testimony that both the older pre-teen female, C.F., and the younger male were diagnosed with
post-traumatic stress syndrome, and depressive disorder. In addition, the boy had a tic disorder and ADHD. At a later
point in the counseling, appellant came to the case worker's office one day angry, and left many, if not all, of the children's
pictures, school progress reports, birth certificates, immunization and social security records. Other material facts will
appear as necessary below.

 Standard of Review

The involuntary termination of parental rights involves fundamental constitutional rights. Holick v. Smith 685 S.W.2d 18,
20 (Tex. 1985). Involuntary termination must be strictly scrutinized in favor of preserving the relationship. Id. The trial
standard of "clear and convincing evidence" has been adopted at common law and codified by statute. SeeTex. Fam. Code
Ann. § 161.001 (Vernon Supp. 2002), § 161.206(a) (Vernon 1996); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980);. "Clear
and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann. § 101.007 (Vernon
1996).

There is some disagreement among Texas intermediate appellate courts on how to apply the heightened scrutiny when we
review a legal or factual sufficiency. See In re W.C., 56 S.W.3d 863, 867 (Tex. App.-Houston [14th Dist.] 2001, no pet.). 
This court has held the requirement of clear and convincing evidence does not alter the appropriate sufficiency standard of
appellate review. In re A.D.E., 880 S.W.2d. 241, 245 (Tex. App.-Corpus Christi 1994, no writ). The Beaumont Court has
recently held a factual sufficiency challenge fails if the evidence permits a rational trier of fact to hold a firm belief or
conviction as to the truth of the allegations asserted. In the Interest of B.B., 971 S.W.2d 160, 164 (Tex. App.-Beaumont
1998, no pet.) (citations omitted). (4) We consider all the evidence and determine whether the factfinder could reasonably
conclude the existence of the fact highly probable. Id. An appellant will succeed in a factual sufficiency challenge only if
the trier of fact could not reasonably have found the fact was established by clear and convincing evidence. Id.

The court may terminate appellant's parental rights if it finds the parent has engaged in one or more instances of the specific
conduct enumerated in the Family Code for grounds of termination and the termination is in the best interest of the child. 
In the Interest of A.D.E. 880 S.W.2d at 245; In the Interest of W.C., 56 S.W.3d at 869. One of the grounds for termination
found by the trial court was that appellant "knowingly placed or knowingly allowed the children to remain in conditions of
surroundings which endanger the physical or emotional well-being of the children." Tex. Fam. Code Ann. §
161.001(1)(D) (Vernon Supp. 2002). To endanger the well-being of a child means to expose to loss or injury or to
jeopardize. Texas Dept. of Human Servs. v. Boyd, 727 S.W.2d 532, 533 (Tex. 1987). Further, allowing children to live in
unsanitary conditions and neglecting their physical needs can constitute endangerment. In re M.C., 917 S.W.2d. 268, 269
(Tex. 1996). 

 Factual Sufficiency Review-Endangerment

As young children, diapers and other litter were left about the abode of the two children. Years later, graphic photos
illustrated dangerous surroundings, including raw meat and an unsheathed ax casually lying by when appellant experienced
one of her several suicidal episodes. According to her own testimony, these suicidal events were occasioned by her
inability to get away from her husband, Aaron. Aaron, in turn, was physically abusive to at least the boy and openly
showed "R" or "X" rated movies to both the male and female youngsters. The living conditions with appellant were
described as chaos and confusion. Appellant suffered from depression, psychotic disorder, delusions and paranoia. 
Appellant was unable to follow through, either with the medical or household care of the children, or often her own
employment. Still, at times, appellant seemed sensible, friendly and loving toward her children, although there was a
serious question of bonding. Appellant remarked about her own severe abuse as a child. This pattern persisted as she
entered and then left abusive relationships with various spouses and boyfriends. At the time of the trial, she still lived with
Aaron, and acknowledged her failure to extract herself (and therefore her children) from his inappropriate behavior.

The results of appellant's illness, behavior and circumstances were illustrated by her frequent failure to seek proper medical
attention for the children, and to care for their educational and emotional needs. Appellant seemed to recognize this when
she voluntarily placed both the girl, C.F., and the boy, C.F., with the Fussels. The Fussels' believed the children ate with
their hands, were infrequently bathed, and that their hair was left unwashed. Not until the Fussels divorced, were the
children returned to appellant. (5) This Fussel placement by appellant occurred after TDPRS's intervention from 1991 to
1994 and before the renewed intervention in 1999. Although appellant's later diagnosed psychosis was controlled by
medication, she more often than not, refused the treatment. At the time of trial, appellant had remained on her medicine for
five months and was doing better. 

The children repeatedly accused Aaron of both physical and sexual abuse. Although the sexual abuse was unproven and
denied by appellant, nightmares, over reactiveness and other symptoms were present and at a minimum, demonstrated the
jeopardy of the children's mental health. One of the counselors even reported that the middle male child, C.F., accused
appellant of sexual contact with him. 

Against our review of this evidence, appellant makes a scant two references to the record in support of her factual
sufficiency challenge. Appellant points us to two comments by the trial judge. The judge observed in open court that
appellant did not know anybody sexually abused the children. The judge found appellant probably knew the children's
relationship with Aaron could be physically and psychologically injurious; she observed Aaron scared the children to
death, hit them, or something. Appellant observes that the judge said appellant never hurt the children, but may have
allowed others to hurt the children. The judge also clearly found endangerment. 

The next judicial statement relied upon by appellant was the judge's comment: ". . . but you [appellant], they knew, did
nothing but love them, okay?" However, this observation from the bench, in context, was part of an explanation to
appellant that her children told the judge they did not want to go back and live with appellant. (6) In any event, section
161.001(1)(D) requires a showing that the environment in which the child is placed endangered the child's physical or
emotional well-being. Tex. Fam. Code Ann. §161.001(1)(D) (Vernon Supp. 2002); Doyle v. TDPRS, 16 S.W.3d 390, 394
(Tex. App.-El Paso 2000, pet. denied) (citing Hann v. TDPRS, 969 S.W.2d 77, 82 (Tex. App.-El Paso 1998, pet. denied)); 
In the Interest of H.C. and S.C., 942 S.W.2d 661, 664 (Tex. App.--San Antonio 1997, no writ). This provision addresses
the child's surroundings and environment rather than parental misconduct, which is the subject of section
161.001(1)(E).Doyle, 16 S.W.3d at 394 (citing Ybarra v. TDPRS 869 S.W.2d. 574, 578 (Tex. App.-Corpus Christi 1993,
no pet.).

Appellant correctly argues that the record does not reveal competent evidence as to one element of the second ground of
termination. TDPRS alleged, and the trial court found, under Family Code section 161.003, that appellant had a mental or
emotional illness or mental deficiency that renders a parent unable to provide for the physical, emotional and mental needs
of the child. Tex. Fam. Code Ann. § 161.003(a)(2) (Vernon Supp. 2002). The proof necessary under this provision also
requires that the illness or deficiency, in all reasonable probability, by clear and convincing evidence, will continue to
render the parent unable to provide for the child's needs until the 18th birthday of the child. Id. Our review of the record
does not show competent evidence of the future "reasonable probability" requirement. (7) However, the court may
terminate parental rights upon the finding of one ground for termination combined with a finding that termination is in the
best interest of the children. A.D.E., 880 S.W.2d at 245. 

 Factual Sufficiency Review-Best Interest 

 The "Holley factors" are well rehearsed in the law. Some of the considerations to determine the best interest of a child or
children include: the desires of the children; the physical and emotional needs now and in the future; parental abilities of
the person seeking custody; availability of program to assist in promotion of the best interest; plans for the child by the
person seeking custody or agency; acts or omissions of the parent indicating whether the existing parental relationship is
proper; and any excuse for the acts or omission of the parent. Holley v. Adams, 544 S.W.2d 367, 371-372 (Tex. 1976);
Ybarra, 869 S.W.2d at 578-579. Here, the children do not desire to return to their mother. The evidence clearly and
convincingly demonstrated the psychological and physical needs of the children were often neglected. While some
programs were available to assist appellant, she herself could not well tolerate help from a woman's crisis center and often
refused counseling. While neither the trial court nor we doubt the love and instincts appellant feels for her children, she has
been unable to extricate herself and her children from an abusive situation. Appellant's psychosis seemed controlled at the
time of the trial but for long periods exceeding her five month improvement, she refused her medication. There is little
doubt appellant tried very hard at times. 

We are nevertheless constrained and respectful of the trial court's findings concerning both endangerment and best interest. 
We hold that the evidence does permit a rational trier of fact to hold a firm belief as to the allegations asserted. In the
Interest of B.B., 971 S.W.2d at 164. Considering all the evidence, we conclude the necessary findings were highly probable
and the trier of fact could reasonably have found those facts were established by clear and convincing evidence. Id. 
Appellant's single issue is overruled. The judgment of the trial court is affirmed.



Don Wittig

Justice


Do not publish. 

Tex. R. App. P. 47.3.



Opinion delivered and filed this the

4th day of April, 2002.





1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.
Gov't Code Ann. § 74.003 (Vernon 1998).

2. The divorce decree was entered in the 159th/217th District Court of Angelina County.

3. The middle male child is about five years older than the younger male child, C.F., who is the subject of this termination
action.

4. In a footnote, the Beaumont Court of Appeals declined to address in detail the split of intermediate court authority on
the level of scrutiny to be applied in reviewing sufficiency challenges under the clear and convincing standard. See In the
Interest of B.B., 971 S.W.2d 160, 164 n. 3 (Tex. App.-Beaumont 1998, no pet.).

5. The trial court noted its own involvement and responsibly for the return of the children to appellant after the Fussels'
divorce. The trial court also verbally noted that some improvement had been made by appellant but that it was constrained
by the legislature's mandatory eighteen month disposition requirement in termination cases. 

6. Nor can we fault the trial judge for addressing appellant compassionately.

7. The psychiatrist gave no opinion on prognosis nor did most of the social workers or M.A. psychologists. Only one
health care provider, who had only a Master's degree, ventured such an opinion. Further examination of the sufficiency of
such an opinion is unnecessary to our disposition.