56 S.W.3d 863 (2001)
In the Interest of W.C.
No. 14-00-01280-CV.
Court of Appeals of Texas, Houston (14th Dist.).
September 6, 2001.
*865 Mariam J. Riskind, Houston, for appellant.
Sandra D. Hachem, Houston, for appellee.
Panel consists of Justices YATES, FOWLER, and WITTIG.

OPINION
WITTIG, Justice.
This is a termination of parental rights case. We first address the proper standard of review for legal and factual sufficiency challenges where the burden of proof at trial was by clear and convincing evidence. We then determine whether an unobjected-to hearsay report admitted at trial showing that appellant abused her child constituted legally and factually sufficient evidence to support the trial court's finding that appellant engaged in conduct endangering the physical and emotional well-being of her child. We affirm.

Background
Appellant is the biological mother of W.C. The Texas Department of Protective and Regulatory Services ("TDPRS") filed suit to terminate their parent-child relationship in 1999. At the time, appellant was sixteen years old and W.C. was approximately six months old. In a separate proceeding, the State filed criminal charges against appellant in juvenile court alleging injury to a child. The criminal case was unresolved at the time of the termination trial.
Bernie Powell was the court-appointed child advocate and guardian ad litem for W.C. At the beginning of her testimony, TDPRS offered, and the court admitted, without objection, the "Court Report" that Powell had prepared for that day's trial. Powell agreed that the report was the "shorthand rendition" of her testimony concerning W.C. The report stated that:
 W.C. "apparently" broke his arm but appellant did not seek medical care for him until eight days after his injury;
 When appellant took W.C. for treatment to Texas Children's Hospital, Dr. Paul Sirbougl diagnosed the child with multiple fractures of the arms, legs, scapula, "several skull fractures," and a subdural hematoma, the latter of which was approximately a month old. The doctor concluded that the injuries were consistent with medical neglect and battered child syndrome;
 Powell interviewed Jennifer Stansbury, a child abuse social worker for 30 years. Stansbury stated that a spiral fracture to the arm, one of W.C.'s injuries, requires "horrific force" to sustain. Additionally, she stated that a child who incurs extensive and severe injuries during the first six months of his life could be at high risk for future physical and emotional problems;[1]
 Powell interviewed Estrude Ortiz and her 20-year-old daughter, Rosa Rodriguez. Appellant lived at Ortiz' residence at the time of the child's injuries. In separate interviews, both witnesses stated that *866 appellant was very rough with W.C. and often had to be scolded for hitting him. Additionally, Powell reported that five-year-old Angel Ortiz, who lived in the same residence, told her and two other investigators that appellant often hit the child;
 Appellant told Powell she had left W.C. with a woman, only identified as "Beatriz," to go to the store. Beatriz was a stranger who stayed at the Ortiz' residence, while Ortiz was out of town, for three days. Appellant said that when she returned from the store, Beatriz told her that she had bathed the baby, that the baby fell, and that is how he received the "swollen arm" and "bump on the head." Powell could not locate Beatriz;
 Appellant could not explain W.C.'s other injuries; however, appellant stated that she and the child slept in the same bed and one night she rolled on top of him. Appellant also asserted she had a "seizure/stroke" at age eleven, which weakened one side of her body and causes her to fall often.
At trial, when asked if appellant could provide the child with a safe and stable environment, Powell testified "I'm not sure that she can." Powell also asserted that termination would be in W.C.'s best interests because he needed "permanency." Powell testified that a family was interested in adopting W.C. but there were some bureaucratic delays hindering the process. Powell added that, in the meantime, W.C. was doing well in his foster home.
Sheila Hazley, the TDPRS caseworker, testified that appellant had a psychological evaluation and a family assessment done. When asked if there was anything in the assessment stating that appellant could not properly care for the child, she replied "no." Neither report was offered, nor was the content of the reports discussed. Hazley testified it would be in the best interest of the child to terminate appellant's parental rights because appellant was a minor, alone in this country without parents, a support system, or residence.
Finally, TDPRS called appellant as a witness and asked her if she had pled guilty to injury to a child. Appellant responded, "I haven't injured the child and if it happen" Appellant's own lawyer then interrupted, objecting to her answer as non-responsive. The court sustained the objection.
At the close of evidence, the trial court ordered the termination of parental rights, finding, among other things, that (1) appellant engaged in conduct which endangered the physical and emotional well-being of the child, and (2) the termination was in the best interest of the child. Tex. Fam. Code Ann. §§ 161.001(1)(E), (2). Appellant now argues that the evidence was legally and factually insufficient to support the court's findings.

Standard of Review
The natural right existing between a parent and child is one of constitutional dimensions. Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the parent-child relationship is "far more precious than any property right"). Therefore, the involuntary termination of parental rights interferes with fundamental constitutional rights. See Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985); In re G.M., 596 S.W.2d 846, 846 (Tex.1980). Involuntary termination proceedings must be strictly scrutinized in favor of preserving the relationship. See Holick, 685 S.W.2d at 20. In light of the grave nature of the proceedings and the constitutional rights implicated, the Texas Supreme Court adopted the clear and convincing standard of proof for *867 the trial of actions seeking termination of parental rights. G.M., 596 S.W.2d at 847. More recently, the requirement of clear and convincing evidence to support termination has been codified in the Family Code. Tex. Fam.Code Ann. §§ 161.001, 161.206(a). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Tex. Fam.Code Ann. § 101.007.
There is some disagreement among Texas intermediate appellate courts whether the clear and convincing burden at trial requires us to review the legal sufficiency and factual sufficiency of a judgment under the same heightened scrutiny.[2] Further, as discussed below, the question of whether to apply heightened scrutiny to a legal sufficiency review and to a factual sufficiency review do not necessarily involve the same issues.
Recently, the Texas Supreme Court recognized that a higher standard of review was mandated by federal law where rights of Constitutional dimension were implicated, namely free speech. Turner v. KTRK Television, Inc., 38 S.W.3d 103, 120 (Tex. 2000). The Turner court stated:
Federal constitutional law dictates our standard of review on the actual malice issue, which is much higher than our typical "no evidence" standard of review.... Under this standard, we must independently consider the entire record to determine whether the evidence is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice."
Id. (quoting Bose Corp. v. Consumers Union, 466 U.S. 485, 510-11, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (other citations omitted)).
In principle, then, we face a similar question in this case because the right of natural parents in the care, custody, and management of their child is a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment. See Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In view of the importance of this fundamental right, the Santosky Court held that a statute allowing for termination of parental rights by a preponderance of the evidence standard violated the Due Process Clause. Id. at 768, 102 S.Ct. 1388. After reviewing the interests at stake, the Court held that a clear and convincing burden at trial was constitutionally mandated where the state seeks to terminate parental rights. Id. at 769, 102 S.Ct. 1388.
As recognized with regard to First Amendment rights in Turner, we should be no less vigilant in our review of the termination of parental rights. See Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (characterizing parental rights as "essential" and "a basic *868 civil right of man"). The heightened protection for those fundamental rights would be rendered meaningless if a termination judgment were erroneously rendered at trial based upon less than clear and convincing evidence, but the reviewing court was required to affirm if there was merely "some evidence" meeting the preponderance standard. Only flawed logic could argue that both the constitutional and legislative requirements apply at the trial level and not at the appellate level. In re K.R., 22 S.W.3d at 97 (Wittig, J., concurring). If we fail to apply the higher constitutional and statutory standards, we, too, fail our own constitutional responsibilities. Id. As such, consistent with the principles enunciated in federal constitutional law, our statutes, and Turner, we utilize the heightened standard in our review of an order terminating parental rights.
We should note, however, that Turner and the federal cases relied upon within, did not address review of these rights as they pertain to factual sufficiency. Thus we do not necessarily have the same federal constitutional mandate to utilize the clear and convincing standard under such a challenge. Accordingly, we determine the appropriate factual sufficiency standard of review as it applies to parental termination cases independently of our legal sufficiency analysis.
Last year, in In re K.R., 22 S.W.3d 85 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (en banc), we reviewed a parental termination appeal. In that case, we employed both the "traditional" preponderance standard and the "heightened" clear and convincing standard for legal and factual sufficiency. Because of this, our en banc review appears to have left as an open question the proper approach to our of review of a case in which the burden of proof at trial was clear and convincing. Id. at 90. We believe the proper standard is readily discernable. In preponderance cases, insufficient evidence points should be sustained when: (1) the evidence is factually insufficient to support a finding by the preponderance of the evidence; or (2) a finding is contrary to the great weight and preponderance of the evidence. Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L.Rev. 361, 366 (1960). Likewise, in a clear and convincing case, an insufficient evidence point may be sustained when: (1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. See In the Interest of L.R.M., 763 S.W.2d 64, 67 (Tex.App.-Fort Worth 1989, no writ); see also Leal v. Texas Dep't of Protective & Regulatory Servs., 25 S.W.3d 315, 320 (Tex.App.-Austin 2000, no pet.) (just as a factual sufficiency review in a criminal case necessarily incorporates the State's burden to prove its case beyond a reasonable doubt, the factual sufficiency review of a civil appeal necessarily incorporates the burden of proof the proponent was required to meet at trial) (citing Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.Crim. App.2000); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 662 (1951); Stone v. State, 823 S.W.2d 375, 381 (Tex.App.-Austin 1992, no pet.)). Therefore, in an involuntary termination case, it only makes sense that where the party complaining of an adverse finding brings a sufficiency challenge on appeal, we review that finding commensurate with the clear and convincing burden of proof at trial.[3]

*869 Legal Sufficiency
Section 161.001 of the Texas Family Code governs the involuntary termination of the parent-child relationship. Under that section, a court may order termination of the parent-child relationship if it finds by clear and convincing evidence one or more of the statutory ground set out in Section 161.001(1), and determines that termination is in the best interest of the *870 child as required by Section 161.001(2). Tex. Fam.Code Ann. § 161.001.
As stated, much of the evidence TDPRS relied upon to show that appellant engaged in conduct which endangered the physical and emotional well-being of the child was the report Powell prepared for the termination hearing. In her brief, appellant completely ignores the report. When questioned about this at oral argument, appellant appeared to assert that the report is merely inadmissible hearsay of minimal or no probative value and should be considered accordingly. We disagree. Though we see no apparent exception to the hearsay rule that would have allowed the report's wholesale admission into evidence, it was nevertheless admitted without objection. The second sentence of Rule 802 states: "Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." Tex.R. Evid. 802. Even under the heavier beyond-a-reasonable-doubt burden in criminal cases, unobjected-to inadmissible hearsay may still support a conviction. See Fernandez v. State, 805 S.W.2d 451 (Tex.Crim.App.1991).[4]
Though we agree much of the material evidence in this case is hearsay, it is nonetheless very damaging and straightforward. Three people claimed to see appellant become violent with her child on numerous occasions, and her child was found to have sustained numerous serious injuries. Thus, the record contains direct[5] evidence that appellant abused her child and strong circumstantial evidence that she was the cause of the child's injuries. Therefore, we find there was legally sufficient evidence to enable a factfinder to determine by clear and convincing evidence that appellant engaged in conduct which endangered the physical and emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(E).
Appellant also challenges the legal sufficiency of the court's ruling that termination would be in the best interests of the child. In Holley v. Adams, 544 S.W.2d *871 367, 371-72 (Tex.1976), the supreme court set out a non-exclusive list of factors to be considered in this determination. Some of those factors, pertinent to the evidence presented at appellant's trial are: the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, parenting abilities, acts or omissions indicating the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions.
As in Holley, only a limited number of the factors from the list were presented at trial in our case. Here, the evidence, viewed in the light most favorable to the judgment, showed that appellant was an incarcerated minor, with no residence, a violent disposition toward her fragile child, and without any means of close familial support. Further, the evidence indicates that appellant inflicted shockingly severe injuries upon her infant child. Appellant's explanations for the child's injuries were nearly non-existent. There was nothing to show that appellant's behavior or her conditions were likely to change in the future. Conversely, though there was a bureaucratic holdup in securing adoptive parents for W.C., there was evidence in the record that he was doing well in his foster home and that at least one stable family was interested in pursing his adoption. Clearly, then, applying the Holley factors to these facts, there was more than sufficient evidence under the clear and convincing standard for a reasonable factfinder to conclude that termination was in the child's best interest. Accordingly, we overrule appellant's legal sufficiency claims.

Factual Sufficiency
In oral argument, appellant appeared to ground her factual sufficiency claim on the fact that the State's case was based largely on hearsay and a very limited record.[6] However, in the absence of any evidence from appellant which indicates the evidence against her were untrue, we fail to see an adequate basis to reverse and remand for a new trial. As discussed, the evidence that appellant severely injured her child is straightforward and is essentially uncontroverted. Appellant offers no reason for us to question the credibility or the perception of Powell, who interviewed the witnesses, nor of the eyewitnesses themselves. Further, though appellant offered something in the way of an excuse, she declined to address the severity and number of the child's injuries. Simply put, there was no meaningful evidence from appellant or any other source that she did not severely injure her baby on multiple occasions. Nor did appellant offer any evidence that she was capable of changingor was inclined to changeher ways so as to provide W.C. with a healthy, safe, non-violent upbringing. Finally, appellant points to seemingly equivocal testimony in the record by TDPRS witnesses, such as Powell's response to the question whether appellant could provide W.C. with a safe and stable environment with "I'm not sure she can." Though this testimony appears somewhat in contrast to the alarming statements taken by Powell in her report, we do not perceive it as any indication that the evidence she presented about appellant's abuse and the child's injuries is untrue. In the context of the *872 stark, unexplained facts and circumstances of this case, the trial judge, who observed Powell's (and the other live witnesses') demeanor and inflection when she made the statement, was free to regard her testimony simply as understatement.[7] We therefore find that the evidence is not factually insufficient to support a finding by clear and convincing evidence; nor is appellant's evidence so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. We overrule appellant's factual sufficiency issues.
The judgment of the trial court is affirmed.
NOTES
[1] It does not appear that Stansbury actually observed W.C. or his injuries; rather, we infer she spoke from assumptions given her by Powell.
[2] Compare In the Interest of A.P. and I.P., 42 S.W.3d 248 (Tex.App.-Waco 2001, no pet. h.); In re B.R., 950 S.W.2d 113, 117-19 (Tex. App.El Paso 1997, no writ); In re H.C., 942 S.W.2d 661, 663-64 (Tex.App.-San Antonio 1997, no writ); In re L.R.M., 763 S.W.2d 64, 66 (Tex.App.-Fort Worth 1989, no writ); Neiswander v. Bailey, 645 S.W.2d 835, 835-36 (Tex.App.-Dallas 1982, no writ) (applying intermediate standard of review), with In re D.L.N., 958 S.W.2d 934, 940 (Tex.App.-Waco 1997, pet. denied); Spurlock v. Texas Dep't of Protective & Regulatory Servs., 904 S.W.2d 152, 155-56 (Tex.App.-Austin 1995, writ denied); In re J.J., 911 S.W.2d 437, 439-40 (Tex.App.-Texarkana 1995, writ denied); In re R.D.S., 902 S.W.2d 714, 716 (Tex.App.-Amarillo 1995, no writ); Faram v. Gervitz-Faram, 895 S.W.2d 839, 843 (Tex.App.-Fort Worth 1995, no writ); In re J.F., 888 S.W.2d 140, 141 (Tex.App.-Tyler 1994, no writ); In re A.D.E., 880 S.W.2d 241, 245 (Tex.App.-Corpus Christi 1994, no writ) (declining to apply intermediate standard).
[3] Prior to K.R., this court held in a factual sufficiency review of a parental termination case we need not engage in an "intermediate" standard of review. See In the Interest of B.S.T., 977 S.W.2d 481, 484 n. 4 (Tex.App.-Houston [14th Dist.] 1998, no pet.). In B.S.T., we applied the traditional factual sufficiency standard of review based on Meadows v. Green, in which the supreme court held "there are but two standards by which evidence is reviewed: factual sufficiency and legal sufficiency. The requirement of clear and convincing evidence is merely another method of stating that a cause of action must be supported by factually sufficient evidence." 524 S.W.2d 509, 510 (Tex.1975). Relying on this language, we found that despite a higher burden of proof in the trial court, our standard of review remained unchanged. B.S.T., 977 S.W.2d at 484 n. 4.

Meadows, however, was a common law malicious prosecution case in which the judicially fashioned clear and convincing rule was not of the same species as the one constitutionally and legislatively mandated in this case. See In re K.R., 22 S.W.3d at 89 (citing Digby v. Tex.Bank, 943 S.W.2d 914, 919 (Tex. App.El Paso 1997, writ denied)). When used in a common law malicious prosecution case, the phrase "clear and convincing evidence" is not a heightened legal burden of proof and does not represent a deviation from the "preponderance of evidence" standard, but is only a cautionary admonition to the trial judge to exercise great caution in weighing the evidence. Id. (citing Ellis County State Bank v. Keever, 888 S.W.2d 790, 792-93 (Tex.1994)). Additionally, Meadows was decided at a time when the supreme court disapproved of an intermediate standard of proof at the trial level. See In re B.R., 950 S.W.2d 113, 118 (Tex.App.-El Paso 1997, no pet.). Since deciding Meadows, the supreme court, in In the Interest of G.M., imposed a clear and convincing burden of proof at trial for termination of parental rights. 596 S.W.2d 846, 847 (Tex.1980); K.R., 22 S.W.3d at 90. Because a higher burden of proof at trial is now constitutionally mandated in parental termination cases, Meadows' authority in the context of a parental termination case is questionable.
We also observe that Meadows did not address the factual sufficiency review standard. To the contrary, the supreme court pointed out that the court of civil appeals had correctly held that no factual sufficiency issues were before that court. Meadows, 524 S.W.2d at 510. However, the supreme court reversed the lower court because it had sought to create an entirely different third standard of reviewthe "clear and convincing" standard. Id. Thus, Meadows did not determine whether an appellate court conducting a factual sufficiency review should incorporate the burden of proof prescribed at trial. Though it seems that this is, in a sense, a fine, if not purely formal, distinction from the question whether an appellate court should employ a third "clear and convincing standard of review" on appeal, it may have led to some difficulty among the courts of appeals in articulating a coherent approach. As the Austin court of appeals stated with regard to appellate courts incorporating the clear and convincing burden into a traditional factual sufficiency review and courts employing a third clear and convincing standard of review, "We believe that our sister courts of appeals in fact employ this same exercise in reaching a decision, despite our corporate difficulty in articulating the standard and confusion in terminology in opinions." Leal v. Texas Dep't of Prot. & Reg. Servs., 25 S.W.3d 315, 321 (Tex.App.-Austin 2000, no pet.). This is perhaps why, in B.S.T, we did not go beyond the analysis in Meadows to determine whether the burden of proof in the lower court should be incorporated into a traditional factual sufficiency review, thus not addressing that precise issue. Whether we utilize a third standard of review or incorporate the clear and convincing burden into the traditional factual sufficiency standard, we do not perceive a practical difference in how it affects the disposition of any given case. We choose the latter because it is more in accord with precedent and because it better preserves the formal factual sufficiency review. In any case, whatever the Texas Supreme Court decides when it finally addresses the issue, we do not believe that under the current state of the law, the high court would require trial courts to adhere to a higher standard of proof in termination cases while requiring the courts of appeals to use the same factual sufficiency standard of review as in cases decided by a preponderance of the evidence. L.R.M., 763 S.W.2d at 67.
[4] In Fernandez, the court, quoting Goode, Wellborn, and Sharlot, discussed the policy behind Rule 802, which is relevant to this case:

The Texas drafters added it (the second sentence in Rule 802) in order to overturn a long-standing Texas doctrine by which inadmissible hearsay, admitted because of failure to object, was artificially deemed to have no probative value so that it could not in any way support a finding of fact or a verdict.... In addition to being unsound in principle, the "hearsay-is-no-evidence" doctrine had pernicious practical consequences. It permitted a party without the burden of proof, by deliberately failing to object to hearsay when offered, to deceive a party having the burden of proof into believing he had adduced sufficient evidence on all necessary elements of his case, only to emerge from "behind the log" on appeal to argue, often successfully, that the verdict or judgment was not supported by evidence. Critics have urged for many years that this unsound and unfair concept be purged from Texas law.... The second sentence of Rule 802 was intended to discourage attorneys from deferring their objections to hearsay evidence because they were confident the evidence would be disavowed in an appellate sufficiency review. Rule 802 places the responsibility for waiver upon the party who fails to object.
Fernandez, 805 S.W.2d at 455-56 n. 3 (quoting 33 Goode, Wellborn, and Sharlot, Texas Rules of Evidence: Civil and Criminal, §§ 802.1, at 571-72 (1988) (citations omitted)).
[5] Direct evidence would normally connote proof from witnesses who saw the acts done or heard the words spoken. Texas & N.O. Ry. v. Warden, 125 Tex. 193, 78 S.W.2d 164, 167 (1935). We use the term here as contrasted to circumstantial evidence. Whether or not the rule change to Tex.R. Evid. 802 elevates hearsay to the status of direct evidence is problematic. Also challenging, but not briefed or argued here, is whether the clear and convincing standard is readily met by hearsay, or worse, hearsay within hearsay.
[6] The reporter's record for the entire trial on the merits, including introductory and other non-substantive matters, was a scant 35 pages. We share appellant's concern that the record was poorly developed. Though we greatly respect the efforts of the persons who advocate for abused children, it seems indefensible to proffer a record in which a parent's rights are terminated primarily on the basis of inadmissible hearsay. Though we affirm the judgment in this close case, such a poorly developed record may not withstand appellate scrutiny in other cases.
[7] At oral argument, appellant implied that trial counsel was ineffective for not objecting to the hearsay report, subpoenaing witness, and other matters. That may be so, but she did not raise that issue on direct appeal. Further, trial counsel may have determined that doing some of things suggested by appellate counsel would only damage his client further. Powell's report shows that she talked to trial counsel on two occasions prior to trial, thus it is apparent that trial counsel did some measure of investigation. It is also telling that when appellant began to assert she did not abuse her child, her own counsel objected to her answer as non-responsive. This might lead one to infer that counsel may have believed he had a good reason to keep his client from being cross-examined about her assertion that she did not abuse the child.