Affirmed and Opinion filed June 20, 2002









Affirmed and Opinion filed June 20, 2002.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01105-CV

____________

 

IN THE INTEREST OF V.B. and T.D.



 



 

On
Appeal from the 313th District Court

Harris County, Texas

Trial
Court Cause No. 01-04216J

 



 

O
P I N I O N

Appellant Vaughn Bowers appeals the trial court=s
termination of his parental rights to his children, V.B. and T.D.  In four issues, Bowers complains that (1)B(2)
the trial court erred in terminating his parental rights under section
161.001(Q) of the Texas Family Code because that section is vague,
unconstitutional, and violates his rights against the imposition of ex post
facto laws and (3)B(4) the evidence is legally and
factually insufficient to support the termination.  We affirm.








I.  Factual
And Procedural Background

T.D.,
age six, and V.B., age seven, lived with their siblings, their biological
mother, Tracie Douglas, and their biological father, Bowers, in a four-bedroom
house.[1] 
Douglas and Bowers were common-law married.  After receiving two referrals for neglectful
supervision by Douglas, as well as referrals for sexual abuse by an unknown
perpetrator, the Texas Department of Protective and Regulatory Services (ATDPRS@) removed T.D. and V.B. from their
home, and placed them in the care of foster parents in November 1999.  The children remain in the care of foster
parents to this day.

At the time the children were removed, Bowers was
incarcerated for attempted murder. 
Bowers has been in and out of prison his entire adult life for crimes
ranging from possession of a deadly weapon to burglary and attempted
murder.  Nonetheless, the TDPRS attempted
to reunite Bowers with his children.  The
TDPRS arranged for the children to have visits with him while he was in jail
and prison. The TDPRS also prepared service plans, all of which were met with
an almost complete lack of cooperation. 
Bowers rarely communicated with the children.  He refused to recognize that his
incarceration had a very negative impact on the children.  In his view, he had done nothing wrong and he
refused to recognize the children=s emotional difficulties.  According to Bowers, the fact that his
children had frequently viewed violence in their home was Ano big deal.@ 
Bowers took anger management and chemical dependency classes Ajust to do something toward@ getting out of prison, and stated
that he took the anger management class only because he thought it was
mandatory C not because he felt that he needed
it.  He stated that he never inquired
about parenting classes or any other classes offered to address or improve his
parenting skills.  Without early parole,
Bowers will not be released from prison until 2004.  








While Bowers was serving his sentence for attempted murder,
Douglas, the children=s biological mother, voluntarily relinquished her parental
rights to V.B., T.D., and all of her other children.  In April 1997, Douglas had received a
four-year deferred adjudication sentence for abandoning and endangering
T.D.  She testified that she regularly
used narcotics up until that time.  She
also testified that Bowers smoked marijuana and cocaine, and drank 40-ounce
beers on a regular basis.  Bowers
admitted that he had used cocaine in the past, but denied any current use.  In May 2000, while the children were in
foster care, the conditions of Douglas= deferred adjudication were revoked
and she was sentenced to ten months in state jail.  

After Douglas voluntarily relinquished her parental rights to
all her children, the TDPRS brought
suit to terminate Bowers=s parental rights to V.B. and T.D.  The case was tried in October 2000, to the
court without a jury.  Finding that the
evidence supported the alleged grounds for termination, and that it was in the
best interest of the children to terminate Bowers=s parental rights, the trial court entered a final decree for
termination. 

II.  Issues
Presented on Appeal

Bowers
presents four issues for our review.  In
his first and second issues, Bowers contends the trial court erred in terminating
his parental rights under section 161.001(Q) of the Texas Family Code because
that section is vague, unconstitutional, and, as applied to him, a violation of
ex post facto application of the law. 
In his third and fourth issues, Bowers contends the evidence is legally
and factually insufficient to support the trial court=s
termination order.  The trial court=s decree states three grounds for
termination: 

(1)  Bowers
engaged in conduct or knowingly placed the children with persons who engaged in
conduct that endangers the physical or emotional well‑being of the
children.  See Tex. Fam. Code
Ann. ' 161.001(1)(E) (Vernon Supp. 2002);








(2)  Bowers constructively abandoned the children
who have been in the permanent or temporary managing conservatorship of the
Department of Protective and Regulatory Services or an authorized agency for
not less than six months, and the department or authorized agency has made
reasonable efforts to return the children to the father; the father has not
visited or maintained contact with the children; and the father has
demonstrated an inability to provide the children with a safe environment.  See id. '
161.001(1)(N); and 

(3)  Bowers knowingly engaged in criminal conduct
that resulted in his imprisonment and inability to care for his children for
not less than two years from the date of filing the petition.  See id. '
161.001(1)(Q)

 

Because we find that there is sufficient evidence to support
the termination under section 161.001(1)(E), we need not address Bowers=s
first two issues, regarding the constitutionality of section
161.001(1)(Q).  See In re S.F., 32
S.W.3d 318, 320 (Tex. App.CSan Antonio 2000, no pet.); Tex.
R. App. P.  47.1. 

III.  Legal
and Factual Sufficiency of the Evidence

In
his third and fourth issues, Bowers challenges the legal and factual
sufficiency of the evidence supporting the termination of his parental rights
to V.B. and T.D.  When presented with
legal and factual sufficiency challenges, we first review the legal sufficiency
of the evidence.  Glover v. Tex. Gen.
Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981).  In
determining a legal sufficiency point, we consider all the evidence and
inferences in the light most favorable to the judgment, and ignore all evidence
to the contrary.  Leal v. Texas Dep=t.
of Protective & Regulatory Servs.,
25 S.W.3d 315, 319 (Tex. App.CAustin 2000, no pet.). 
If there is more than a scintilla of evidence to support the finding, we
overrule the point of error and uphold the finding.  Id. at 321 (holding that the clear and
convincing standard does not change the way the court reviews the sufficiency
of the evidence).  There is some evidence
when the proof supplies a reasonable basis on which reasonable minds may reach
different conclusions about the existence of a vital fact.  Orozco v. Sander, 824 S.W.2d 555, 556
(Tex. 1992).








In contrast, when reviewing the factual sufficiency of the
evidence,  we may sustain Bowers=s factual sufficiency challenge if
(1) the evidence is factually insufficient to support the trial court=s finding by clear and convincing
evidence; or (2) the trial court=s finding is so contrary to the
weight of contradicting evidence that no trier of fact could reasonably find
the evidence to be clear and convincing.  In re W.C., 56 S.W.3d 863, 868 (Tex. App.CHouston [14th Dist.] 2001, no pet.).  Accordingly, we may reverse only if, after
reviewing all the evidence in the record, we determine that the evidence is
factually insufficient to support the trial court=s finding by clear and convincing
evidence.  In re W.C., 56 S.W.3d
at 865.

Termination
of parental rights is a drastic remedy and is of such weight and gravity that
due process requires the petitioner to justify termination by Aclear
and convincing evidence.@  Tex. Fam. Code Ann. '
161.206(a).  This burden is defined as
the Ameasure or degree of proof that
will produce in the mind of the trier of fact a firm belief or conviction as to
the truth of the allegations sought to be established.@
 Id. '
101.007.  Parents=
rights to Athe companionship, care, custody
and management@ of their children are
constitutional interests Afar more precious than any property
right.@  Santosky, II v. Kramer, 455 U.S. 745, 758B59
(1982).  Termination proceedings should
be strictly scrutinized, and involuntary termination statutes are strictly
construed in favor of the parent.  Holick v. Smith, 685 S.W.2d 18, 20B21
(Tex. 1985).

Thus, in proceedings to terminate the parent‑child
relationship brought under section 161.001 of the Family Code, the petitioner
must establish one or more of the acts or omissions enumerated under
subdivision (1) of the statute, and that termination is in the best
interest of the child.  Tex. Fam. Code Ann. '
161.001(1), (2); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.
1984).  Proof of one does not relieve the
petitioner from establishing the other.  See Holley v. Adams, 544 S.W.2d 367, 370
(Tex. 1976). 

A.  First Prong: Statutory
Proof








In this case, the trial court
found, among other things: (1) Bowers knowingly placed or knowingly allowed his
children to remain in conditions or surroundings that endangered their
emotional or physical well‑being and (2) termination of the parent‑child
relationship between Bowers and the children would be in each child=s
best interest.  See Tex. Fam. Code Ann. '
161.001(1)(E).  Section 161.001(1)(E)
provides that termination may be ordered if the parent has Aengaged
in conduct or knowingly placed the child with persons who engaged in conduct
which endangers the physical or emotional well-being of the child.@
 See id.   

Subsection E requires us to look at
the parent=s conduct alone, including actions,
omissions, or the parent=s failure to act.  Id. 
The parent=s endangering acts need not have
been directed at the child, or have caused an actual injury or threat of injury
to the child; instead, this element may be satisfied by showing the parent in
question engaged in a course of conduct that endangered the child=s
physical or emotional well‑being.  In
re R. D., 955 S.W.2d 364, 368 (Tex. App.CSan
Antonio 1997, pet. denied).  AEndanger@
under subsection E means to expose to loss or injury, to jeopardize.  Tex. Dep=t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).  The term means more than a threat
of Ametaphysical injury,@
and there must be evidence of endangerment to the child=s
physical or emotional well-being as the direct result of the parent=s
conduct.  In re R.D., 955 S.W.2d
at 368; Dupree v. Tex. Dep=t of Protective & Regulatory
Servs.,
907 S.W.2d 81, 83B84 (Tex. App.CDallas
1995, no writ).

In making an endangerment
determination, courts look to what the parent did both before and after the
child=s birth.  Avery v. State, 963 S.W.2d 550, 553 (Tex.
App.CHouston [1st Dist.] 1997, no
writ).  Additionally, termination under
subsection E must be based on more than a single act or omission; a voluntary,
deliberate, and conscious Acourse of conduct@
by the parent is required.  In re D.T.,
34 S.W.3d 625, 634(Tex. App.CFort Worth 2000, pet. denied); In
re K.M.M., 993 S.W.2d 225, 228 (Tex. App.CEastland
1999, no pet.). 








Here, the record plainly
demonstrates that the trial court had clear and convincing evidence to support
terminating Bowers=s parental rights to V.B. and T.D.,
under section 161.001(1)(E).  In June 1999, T.D., then age 4, and V.B., then age 5, witnessed
their father stab two people in their home. 
Despite the obvious brutality of this act, Bowers testified that it was
not a Abig
deal@
that his children witnessed this violent outburst.  Bowers also testified that as long as his
actions were in self-defense, he did not see a problem with exposing his
children to violent behavior.  Bowers
admitted that he had been convicted of two other crimes C
burglary of a building and reckless discharge of a firearm in a metropolitan
area.  In addition, Bowers=s
mother, the children=s paternal grandmother, attacked one of children with a knife
because he reportedly Adrank [sic] all the water.@ 

Bowers is presently incarcerated for
attempted murder and has been in and out of prison his entire adult life for
very serious crimes.  Without early parole, Bowers will not be released until 2004.  Although imprisonment of a parent, standing
alone, does not constitute Aengaging in conduct that endangers
the emotional or physical well‑being of the child,@
it is a factor for consideration by the trial court on the issue of
endangerment.  Boyd, 727 S.W.2d at
533.  If the evidence, including the
imprisonment, shows a course of conduct that has the effect of endangering the
physical or emotional well‑being of the child, a finding under section
161.001(E) is supportable.  Id. at
534; see also Spangler v. Texas Dept. of Protective & Regulatory Servs.,
962 S.W.2d 253, 260 (Tex. App.CWaco 1998, no pet.) (upholding
termination when father abused mother and was frequently in jail); In the
Interest of A.K.S., 736 S.W.2d 145, 146 (Tex. App.CBeaumont
1987, no writ) (holding evidence of father=s imprisonment, type of crime for
which imprisoned, and father=s compulsive conduct of exhibiting
genitals to women supported termination). 
The State need not show incarceration was a result of a course of
conduct endangering the child; it need only show incarceration was part of a
course of conduct endangering the child. 
Boyd, 727 S.W.2d at 534.  
Thus, if the evidence, including imprisonment, proves a course of
conduct that has the effect of endangering the child, the requirement of
subsection E is satisfied.  Id. at
533B34.








After V.B. and T.D. were taken into custody, TDPRS completed
several reports assessing the children and their life at home.  One report revealed that Douglas had beaten
T.D. with a belt as discipline, allowed her to go unbathed and without adequate
clothing, and allowed her to roam the neighborhood with her older brothers and
sexually Aact out@ with them.  In addition,
the report stated that T.D. saw her parents using narcotics.  These findings led TDPRS to conclude the home
environment was unstable and the children were frequently exposed to criminal
behavior.  A Child Trauma Program
Evaluation summarized the social and family problems in the children=s
home to include: 

1)
Extensive family history with CPS;

2)
Lack of stable housing;

3)
Biological mother reported to be a victim of domestic violence and physical
abuse;

4)
Biological mother on probation for endangerment to a child, and previously
served probation for the same offense;

5)
Biological father reported to have extensive criminal involvement, including
jail time for attempted murder and possession of a deadly weapon;

6)
Biological father reported to drink alcohol every day and use narcotics on a
regular basis;

7)
Older siblings (ages 7 and 8) reported to have significant psychiatric and
emotional problems, including bedwetting, stealing, and sexually acting
out;  and 

8)
V.B. and his siblings were reported to sleep in the same bed as their mother
prior to entering TDPRS custody. 

Janette Richardson, a licensed counselor, began working with
V.B. and T.D. in December of 2000.  She
testified that T.D. was very developmentally delayed, withdrawn, and
depressed.  V.B. also showed depression,
a great deal of anger and hostility, and lack of trust.  Richardson testified that the children=s
behavior was consistent with a lifestyle that was unstable and that subjected
them to abuse  and neglect.  Richardson testified that though the children
have made significant progress in therapy, they will require long-term therapy
to address much deeper problems.  During
counseling, V.B. revealed that he had seen his father fight with another man
and beat that man=s head into the ground. 
He also told Richardson that his father had murdered someone and he knew
both his Adaddy and his mother were in jail.@  V.B. stated that the people in his family Afelt
icky stuff and thought icky stuff, nasty stuff.@  








Glenda Tolliver, a CPS case worker testified that it would be
in the children=s best interest to terminate Bowers=s
parental rights because the children need stability and cannot postpone their
need for care and permanency until the father is released from prison.  She further stated that the children have
made progress, and for it to continue, they need someone to continue providing
for their educational and emotional needs. 
She also expressed grave concerns because of Bowers=s
tendency to commit violent acts in front of his children without regard to the
effects his violent acts may have on his children.

The guardian ad litem, Rebecca Villalaz, testified that her
main concerns were (1) Bowers=s frequent incarceration; (2) the fact he had committed a
violent crime in front of his children and thought it was Ano
big deal;@ (3) his lack of participation in the services provided to him;
and (4) his lack of communication with the TDPRS.  She stated her opinion that Bowers is not a
fit parent and is unable to provide a safe or stable environment for the
children now or in the future. 

Viewing the evidence most favorably
to the verdict, we conclude there is legally sufficient evidence of voluntary
and deliberate conduct by Bowers from which the trial court could reasonably
have concluded there was a high probability that his conduct endangered the
children=s emotional or physical well‑being.
  See Tex.
Fam. Code Ann. ' 161.001(1)(E).  In addition, we find the evidence is factually sufficient to
support a finding of termination by clear and convincing evidence.  Furthermore, the evidence on which Bowers
relies is not so contrary to the weight of contradicting evidence that no trier
of fact could reasonably find the evidence to be clear and convincing.

Because we have concluded there is
both legally and factually sufficient evidence to support the trial court=s
findings under section 161.001(1)(E), we need not address Bowers=s
first and second issues regarding the constitutionality of section
161.001(1)(Q).  However, in order to
uphold the judgment of termination, we must also examine the sufficiency of the
evidence to support the finding that the termination is in the children=s
best interest. 








B. 
Second Prong: Best Interest of the Children 

In order to uphold a finding of
termination of Bowers= parental rights to V.B. and T.D.,
there must also be sufficient evidence that the termination is in the children=s
best interest.  See
Tex. Fam. Code
Ann. '
161.001(2).  There is a strong presumption that the best
interest of a child is served by keeping custody in the natural parent.  In re K.C.M., 4 S.W.3d 392, 393‑95
(Tex. App.CHouston [1st Dist.] 1999, pet.
denied).  

In Holley v. Adams, the Texas Supreme Court outlined a
number of factors to be examined in determining the best interest of the child,
including: (1) the desires of the child; (2) the present and future physical and
emotional needs of the child; (3) the present and future emotional and physical
danger to the child; (4) the parental abilities of the person seeking custody;
(5) programs available to assist those persons in promoting the best interest
of the child; (6) plans for the child by those individuals or by the agency
seeking custody; (7) the acts or omissions of the parent that may indicate that
the existing parent‑child relationship is not appropriate; and (8) any
excuse for the acts or omissions of the parent.  Holley, 544 S.W.2d at 371B72. 
ABest interest@ does not require proof of any unique
set of factors, nor does it limit proof to any specific factors.  Id. 
Moreover, the best interest standard does not permit termination merely
because a child might be better off living elsewhere.  Termination should not be used to merely
reallocate children to better and more prosperous parents.  In re C.H., 25 S.W.3d 38, 52B53 (Tex. App.CEl Paso 2000, pet. granted).

The TDPRS points primarily to Bowers=s drug abuse, criminal activity, lack
of cooperation, and inability to understand or appreciate the difference
between a safe and unsafe environment, as evidence supporting the trial court=s best-interest finding.  Though Bowers=s history of drug abuse and inability
to maintain a lifestyle free from arrests and incarcerations support the trial
court=s endangerment finding, this evidence
is also relevant to a best interest determination.  We also consider the Holley factors
that are pertinent to the evidence presented at trial.








1. 
Desires of Children.  Although neither child expressly
stated whether they wished to live with their father after he was released from
prison, their behavior in therapy indicates that they do not.  However, the desires of the children are just
one factor.  Even if we determined that
these children truly wanted to be returned to their father when he was released
from prison, such a preference is not enough to resolve the issue of best
interest of the child.  See In re
Cassey D., 783 S.W.2d 592, 596 (Tex. App.CHouston
[1st Dist.] 1990, no pet.).  

2. 
Parental Abilities.  Bowers has failed miserably in the
performance of his parental duties and has utterly failed to take advantage of
many opportunities to develop and improve his parenting skills.  He has continued to engage in violent and
illegal behavior in front of his children, without the slightest concern for
the very serious impact his actions could have on their emotional development
and well-being.  Bowers has not shown
concern about his children=s basic physical and emotional
needs and has even refused to recognize that there is a problem.  As a direct result of these bad choices, he
has not been available to his children. 
He was incarcerated for attempted murder at the time of the termination
proceeding because of violent acts committed in their presence.  Bowers failed to participate in classes
designed to equip him with the skills he needed to care for his children.  Bowers=s lack of parental abilities
clearly weighs in favor of the trial court=s finding. 

3. Present and Future Physical and
Emotional Needs of the Children.  The children need permanency and security and
will need long-term therapy.  The record
contains substantial evidence of Bowers=s inability to provide a stable and
safe home for his children now or in the future.  This factor also weighs in favor of the
trial court=s finding.  








4. 
Present and Future Physical Danger to the Children.  The evidence at the termination proceeding clearly
showed that Bowers had a nonchalant attitude toward violence, and did not see
the harm in subjecting his young children to violent crime, nor did he believe
it to have contributed to any of their present emotional and developmental
problems.  Bowers has not  shown that he is willing to change his
behavior.  Thus, the children, if
returned to their father upon his release from prison, could face future
physical danger.      

5. 
Future Plans for the Children.  The TDPRS=s goal for the children is
adoption.  Tolliver
testified that the TDPRS long-range plan for the children upon termination is
to assess the children=s situation, continue therapy and services as needed, put them
on the Texas Adoption Resource Exchange, and work with any person that
expresses an interest in adopting them.  Several
people have expressed an interest in adopting the children. 
Bowers has failed in his attempts at parenting and there is no
indication that his behavior will change when he is released from prison.  Accordingly, this factor also weighs in favor
of the trial court=s best-interest finding. 

6. 
Programs Available and Use of Programs by Parent. 
Bowers failed to cooperate with the TDPRS=s service plan and visitations, and
has rarely communicated with the children. 
Although Bowers participated in anger management and chemical dependency
classes, he stated that he never inquired about parenting classes or any other
classes offered to help improve his abilities as a parent.  Thus, this factor also weighs in favor of the
court=s best interest finding. 

Our consideration of the pertinent Holley
factors, coupled with Bowers=s history of violence and his inability
to maintain a lifestyle free from arrests and incarcerations, is some evidence
that termination would be in the children=s best interest.  Though this evidence overlaps the proof
required to establish endangerment by Bowers=s course of conduct, it also provides
legally and factually sufficient evidence to support the finding that
termination is in the children=s best interest. 
Accordingly, we overrule Bowers=s third and fourth issues challenging
the sufficiency of the evidence. 

IV.  CONCLUSION








Having determined the evidence is both legally and factually
sufficient to support the trial court=s findings under sections
161.001(1)(E) and (2), and because we need only find sufficient evidence on one
ground of termination, we affirm the trial court=s judgment.

 

 

 

______________________________

Kem Thompson Frost

Justice

 

 

 

Judgment rendered and Opinion filed June
20, 2002.

Panel consists of Chief Justice Brister
and Justices Anderson and Frost.

Do Not Publish C
Tex. R. App. P. 47.3(b).

 

 

 











[1]  Tracie
Douglas is also the biological mother of several other children not involved in
this appeal.